

# NUMBER 13-14-00720-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI—EDINBURG

_____

## IN THE INTEREST OF E.K., B.G., AND L.G., MINOR CHILDREN

_____

### On appeal from the 24th District Court
### of Victoria County, Texas.

_____

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

This is an appeal of the termination of parental rights to E.K., B.G., and L.G., minor children.[1]  Appellants are R.R. ("mother"), the mother of E.K., B.G., and L.G., and J.G. ("father"), the father of B.G. and L.G.[2]   Appellants both argue: (1) the evidence is

---

[1] In appeals involving the termination of parental rights, the Texas Rules of Appellate Procedure require the use of an alias to refer to a minor.  TEX. R. APP. P. 9.8.  We may also use an alias "to [refer to] the minor's parent or other family member" to protect the minor's identity.  *Id.*

[2] Termination proceedings against E.K.'s father were severed from the underlying proceedings.

insufficient to support the trial court's findings regarding four statutory grounds for termination enumerated in Texas Family Code section 161.001(1); and (2) the evidence is insufficient to show termination was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(1) (West, Westlaw through 2013 3d C.S.). We affirm.

## I. BACKGROUND

### A. History of Domestic Violence and Department Intervention

Don Stone, an officer with the Victoria Police Department, testified that he saw mother crying outside a convenience store at midnight on April 27, 2011. Stone approached mother and she described a recent altercation with father. Mother stated she punched the bedroom door because father would not allow her to enter, and he responded by dragging her down the stairs and forcing her out of the apartment. Mother then left the residence with E.K. Stone observed the following injuries: a bruised collarbone; red marks on mother's arm and back; and scratches on her shoulder and legs. Stone arrested father at his residence, but no charges were filed.

On April 17, 2013, the Department of Family and Protective Services (the "Department") investigated a report of domestic violence involving appellants. E.K. reported that father choked mother and held her head under water. Appellants both acknowledged a history of domestic violence to the Department's investigator. They agreed to place the children with maternal grandmother M.C., and the Department restricted appellants to supervised visitation. On June 7, 2013, the trial court ordered appellants to participate in services, including domestic violence and parenting classes.

Mark Hayden, a Victoria Police Department officer, testified that he received a call in September of 2013 regarding a domestic disturbance. Upon arrival, he witnessed

2

mother banging on the front door of the residence. Mother stated father would not allow her inside. After knocking on the door and receiving no response, Hayden suggested mother "leave and let things cool down." Hayden returned an hour later after appellants' neighbor reported seeing mother assault father in the driveway of the residence. Father informed Hayden he was on his front porch when mother slapped and pushed him. Mother admitted doing so, and Hayden placed her under arrest. No charges were filed.

Angelina Gomez, a Department supervisor, testified appellants engaged in an argument with M.C. during a September 9, 2013 visitation. As father was leaving, he drove his vehicle over mother's foot.

Helen Velasquez, a Department employee, testified that she arrived at appellants' residence on September 17 to supervise a visitation. Velasquez witnessed mother arguing with M.C. while M.C. was in her vehicle with the children. Velasquez was speaking to father when she heard M.C. yell that mother cut herself. Velasquez observed blood on mother's arm, and after speaking with her supervisor by phone, she instructed M.C. to leave with the children. Velasquez could hear one of the children screaming during the incident.

Later that day, mother cut father with a razor blade as he attempted to remove it from her. Gomez testified that father called her to report the incident relaying, "she stabbed me." He claimed that mother was crazy, and she was trying to kill him.

## B. Petition to Terminate Parental Rights and Court-Ordered Services

On September 18, 2013, the Department filed a petition to terminate appellants' parental rights. The pleading was supported by a caseworker's affidavit detailing a history of domestic violence. The trial court entered an emergency order for protection of the

children and named the Department the temporary managing conservator. The children remained in M.C.'s possession.

Following an adversary hearing, the trial court ordered appellants to complete a psychological evaluation, counseling, parenting classes, and drug and alcohol assessments and testing. The court further ordered appellants to comply with each requirement set out in the Department's service plan throughout the pendency of the suit. At the status hearing, the court adopted the plan of service filed by the Department and advised the parents that progress under the plan would be reviewed at subsequent hearings.[3]

## C. Continued Domestic Violence and Compliance with Service Plan

Denise Meza, a Department caseworker, testified that mother claimed father hit her on her head in January 2014. Christina Tate, an officer with the Victoria Police Department, testified regarding a sexual assault reported by mother on March 31, 2014. Mother claimed father pulled her into his vehicle, took her to his residence,[4] forcefully removed her clothes, ripped her bra, strangled her, and sexually assaulted her. After the assault, she reported father forced her to sleep naked in the corner of the bedroom and would not allow her to use the restroom. Mother was pregnant with their third child at the time of the assault. She told Tate this was not the first time she was assaulted by father. Mother did not pursue criminal charges. Stone later observed appellants together at a movie theatre.

---

[3] The service plan adopted by the trial court is not included in the record on appeal. However, the Department's caseworker testified regarding appellants' compliance with court-ordered services as detailed later in this opinion.

[4] The record reflects that appellants maintained separate residences at the time.

4

In August 2014, a Department caseworker took photographs of mother during a supervised visitation. The photographs, admitted at trial, depicted cuts to mother's left arm.

Mother completed her court-ordered services with the exception of individual counseling. Her counselor Wendy Holder testified that mother was discharged from counseling in April 2014 for missing three consecutive appointments. She missed two further appointments in August after services were reinstated. Mother shared with Holder that she and father had a violent relationship. She believed father was stalking her, and she feared for her safety. Holder testified that mother demonstrated minimal progress toward her counseling goals. Holder explained "[m]y primary concern is [mother]'s ability to protect herself. You have to be able to protect yourself before you can protect your children. So her inability to protect herself would put the children in harm's way."

Father did not complete the batterer's intervention and prevention program required by his service plan. His domestic violence counselor testified he did not exhibit progress toward his counseling goals because he never admitted to committing acts of violence against mother.

**D. Father's Testimony**

Father testified he has worked for a plumbing company for the past three years, and has been in his current residence for almost a year. He stated he was still attending a batterer's intervention and prevention program at the time of trial, and "only [had] a couple of classes left." He admitted the police were called on multiple occasions regarding domestic disturbances, including when mother cut him with a razor. Father acknowledged arguing with mother in the past, "[m]ainly whenever bills came, money

5

situations kind of[,]" but denied ever hitting, choking, or sexually assaulting her. He testified he last saw mother in April 2014.

### E. Mother's Testimony

Mother testified the domestic violence allegations were "blown out of proportion." She maintained she would argue with father over financial issues, and E.K. would ask why they were yelling and would tell them to stop. Mother testified she has been employed at a restaurant for approximately a year, but was living in her car at the time of trial. Mother admitted she slapped father and cut him "on accident," and maintained he hit her once by mistake. She explained her sexual encounter with father in March of 2014 was nonconsensual "at first" and he would not let her leave his residence. Mother acknowledged a problem with cutting herself. She admitted to exposing her children to violence, but maintained she tried to stay away from father "so I can get my kids back." Mother claimed she was beginning a four-year nursing program, and intended to continue counseling. She was seen with cuts on her arm the day of trial.

### F. Children's Placement and Visitation

The children have lived with M.C. throughout the underlying proceedings. M.C. testified appellants have exhibited a pattern of violence during their relationship, and she has observed bruises on mother. She reported B.G. and E.K. exhibit "violent tendencies" and E.K. has "outbursts of anger", but the children are happy and "more playful" since being placed with her. M.C. believes E.K. is afraid of father. M.C. admitted she was arrested in June of 2013 for assaulting mother, but maintained she was acting to protect E.K.

Susan White, the court-appointed special advocate, testified the children were "very happy" in their current placement and the environment was "very well structured."

6

White stated she monitored visits with the parents and saw the children "lash out" at mother. She witnessed mother screaming while chasing one of the children. White recommended the children remain in their current placement. She believed appellants' parental rights should be terminated, noting M.C. plans to adopt the children.

Appellants maintained regular visitation with the children. For a period of time, mother talked to her children daily via Skype, a video-conferencing program. The child E.K. attended counseling throughout the proceedings and disclosed she looks forward to seeing her mother.

**G. Order of Termination**

Following a bench trial, the trial court terminated appellants' parental rights pursuant to Texas Family Code sections 161.001(1)(D), (E), (I), and (O). *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D), (E), (I), (O). This appeal followed.

## II. STANDARD OF REVIEW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P,* 210 S.W.3d 776, 778 (Tex. App.— Corpus Christi 2006, no pet.). Before terminating parental rights, the trier of fact must find: (1) the parent committed an act prohibited by section 161.001(1) of the Texas Family Code; and (2) termination is in the child's best interest. TEX. FAM. CODE ANN. §§ 153.002, 161.001; *see In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005).

Termination must be supported by clear and convincing evidence. *In re D.S.P.,* 210 S.W.3d at 778. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal

7

proceedings. *In re G.M.,* 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.,* 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002).

In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.,* 163 S.W.3d at 85. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could have done so, and we disregard all evidence a reasonable fact finder could have disbelieved. *Id.* However, we must also consider undisputed evidence, if any, that does not support the finding. *Id.*

In reviewing the evidence for factual sufficiency, we must give due deference to the trial court's findings and not supplant its judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact finder could reasonably form a firm conviction or belief of the truth of the allegation. *Id.* The evidence is factually insufficient if the disputed evidence a reasonable fact finder would not have credited in favor of the finding is so significant that the trial court could not reasonably have formed a firm belief or conviction in the truth of its finding. *Id.* (citing *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)). In applying this standard, an appellate court's review must not be so rigorous that only fact findings established beyond a reasonable doubt could withstand review. *Id.*

8

## A. Termination Under § 161.001(1)(D) and (E)

By her first issue, mother challenges the legal and factual sufficiency of the evidence supporting each of the statutory grounds for termination relied on by the trial court. "Only one statutory ground is required to terminate parental rights under section 161.001." *In re I.G.*, 383 S.W.3d 763, 768 (Tex. App.—Amarillo 2012, no pet.). Therefore, we will affirm the trial court's order of termination if any one of the statutory grounds forming the basis of the termination order is supported by sufficient evidence. *Id.*

The trial court found by clear and convincing evidence that mother:

(D) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children[;]

(E) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children[;]

(I) contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261; [and]

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children.

TEX. FAM. CODE ANN. §§ 161.001(1)(D), (E), (I), (O).

### 1. Endangerment

Because the evidence relevant to sections 161.001(1)(D) and (E) is interrelated, we address those grounds together. Both (D) and (E) require proof of endangerment, which means to expose to loss or injury, or to jeopardize a child's emotional or physical

health.  *Doyle v. Tex. Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied).  Under subsection (D), we examine the evidence related to the child's environment to determine if it is the source of the endangerment to the child's physical or emotional well-being.  *In re D.T.,* 34 S.W.3d 625, 632 (Tex. App—Fort Worth 2000, pet. denied).  Under subsection (E), we must determine whether there is evidence showing that the endangerment was the direct result of the parent's conduct, including acts, omissions, and failures to act.  *In re J.T.G.,* 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).  The evidence must show a voluntary, deliberate, and conscious course of conduct by the parent.  *Id.*

While endangerment often involves physical endangerment, the statute does not require conduct directed at the child or actual injury to the child.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).  Conduct that subjects a child to a life of uncertainty and instability endangers a child's physical and emotional well-being.  *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).  If a parent abuses or neglects the other parent, the conduct can be used to support a finding of endangerment.  *In re C.J.F.,* 134 S.W.3d 343, 351 (Tex. App.—Amarillo 2003, pet. denied) (citing *In re W.J.H.,* 111 S.W.3d 707, 716 (Tex. App.—Fort Worth 2003, pet. denied)).  A parent's failure to remove oneself and the children from a violent relationship endangers the children's physical or emotional well-being.  *See In re I.G.*, 383 S.W.3d at 770; *In re M.R.,* 243 S.W.3d 807, 818–19 (Tex. App.—Fort Worth 2007, no pet.).  The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent.  *A.S. v. Tex. Dep't of Family & Protective Servs.,* 394 S.W.3d 703, 712 (Tex. App.—El Paso 2012, no pet.).

10

## 2. Analysis

The trial court heard evidence demonstrating a pattern of domestic violence occurring over a period of three years, both before and after the Department filed its petition to terminate appellants' parental rights. Mother was both a victim and perpetrator of violence. Further, mother has exhibited a pattern of self-harm, including cutting herself at a scheduled visitation with the children. The record reflects that E.K. witnessed violence between mother and father. Through mother's testimony and admissions to her counselor, she acknowledged a history of domestic violence and the children's exposure to the same. The trial court heard testimony that, despite the benefit of counseling, mother is unable to protect herself and the children. This inability is further demonstrated by mother's failure to remove herself from the relationship with father despite continued violence. Mother would not acknowledge the severity of violence at trial, claiming the allegations were "blown out of proportion."

Mother's self-injurious behavior in front of the children, her involvement in repeated domestic violence with father and denial of the same, and her failure to remove herself and the children from the relationship constitutes conduct endangering the physical or emotional well-being of the children. *See In re C.J.F.*, 134 S.W.3d at 351 ("domestic violence, want of self-control and propensity for violence may be considered as evidence of endangerment"); *In re I.G.*, 383 S.W.3d at 770 ("a parent's failure to remove himself and his children from a violent relationship endangers the physical or emotional well-being of the children"). Considering the evidence in the light most favorable to the trial court's finding, we conclude the evidence presented was legally sufficient to support termination under sections (D) and (E). *See In re J.L.,* 163 S.W.3d at 85. Further, giving due

11

deference to the evidence the fact finder could reasonably have found to be clear and convincing, we conclude the evidence is factually sufficient to support termination under sections (D) and (E). *See In re H.R.M.,* 209 S.W.3d at 108. There is no disputed evidence a reasonable fact finder could not have resolved in favor of its finding. *See In re J.F.C.,* 96 S.W.3d at 266.

We need not address the remaining statutory grounds for termination. *See* TEX. R. APP. P. 47.1. We overrule mother's first issue.

## B. Best Interest of the Children

By her second issue, mother challenges the legal and factual sufficiency of the evidence supporting the trial court's best interest finding. Specifically, mother maintains the evidence was not sufficient to support this finding because the children "clearly desired a relationship with their mother[.]"

### 1. *Holley* Factors

We consider the following non-exhaustive list of factors in determining whether parental termination is in the child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1976). The party seeking parental termination is not required to prove all nine factors. *In re C.H.,*

12

89 S.W.3d at 27; *In re J.R.S.,* 232 S.W.3d 278, 284 (Tex. App.—Fort Worth 2007, no pet.). In some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *See In re C.H.,* 89 S.W.3d at 27.

### 2. Analysis

a. <u>Desires of the children</u>. While there was no testimony regarding the desires of the children (ages 5, 2, and 1), the record reflects that the children looked forward to visitations with mother. The trial court also heard testimony that the children are happy and "more playful" in their current placement.

b. <u>Emotional and physical needs of the children</u>. The record reflects B.G. and E.K. exhibit violent tendencies, and E.K. has outbursts of anger. The children have "lashed out" at mother during visitations. The court-appointed special advocate witnessed mother screaming at and chasing one of the children during a visitation. On the other hand, the trial court heard testimony that M.C. has provided a structured environment for the children and that they are "very happy" in her home.

c. <u>Emotional and physical danger to the children and mother's parenting abilities</u>. The record demonstrates a pattern of domestic violence between mother and father, sometimes in the presence of the children. Mother testified she tried to stay away from father, but she continued to see him even after she reported the sexual assault incident. Despite evidence to the contrary, mother sought to diminish the extent of the violence, testifying the incidents were "blown out of proportion." The record reflects mother demonstrated minimal progress toward her counseling goals, and as a result would be unable to protect herself and the children.

The trial court also heard testimony that mother is not only a victim, but a perpetrator of domestic violence, and that she has exhibited a pattern of cutting herself. Mother's refusal to acknowledge the severity of the domestic violence and her inability to remove herself from the relationship demonstrate a likelihood of emotional and physical danger to the children should they be returned to mother's care. *See In re N.K.*, 399 S.W.3d 322, 334 (Tex. App.—Amarillo 2013, no pet.). This evidence is also relevant to the fourth *Holley* factor, as it raises significant doubts as to mother's parenting abilities. *See A.S.*, 394 S.W.3d at 715 (finding the evidence raised significant doubts as to parenting abilities, where the parent allowed his child to reside in the home of a known drug abuser).

Mother's lack of stability is also relevant. When this case was heard by the trial court, mother was living in her car. "Without stability, income, or home, a parent is unable to provide for a child's emotional and physical needs." *Id.* at 714.

d. <u>The programs available to assist the parties seeking custody</u>. The evidence shows mother completed many of the services offered by the Department except individual counseling. Mother exhibited minimal progress toward her counseling goals and did not demonstrate to the counselor she could protect herself and the children from future domestic violence.

e. <u>Plans for the children by the parties seeking custody and stability of the home or proposed placement</u>. The children have resided with their grandmother M.C. throughout the underlying proceedings. M.C. intends to adopt the children. As set out above, the evidence shows M.C. has provided a structured environment for the children and they are "very happy" in her home.

14

f. Acts or omissions committed by the parent which may indicate that the existing parent child relationship is not proper and any excuse for those acts or omissions. Mother acknowledged exposing the children to domestic violence while also claiming the reports of violence were "blown out of proportion." Mother testified she tried to stay away from father "so I can get my kids back." The trial court, as fact finder, was entitled to resolve disputed facts in favor of its finding, and could have reasonably disbelieved some or all of mother's excuses based on the evidence presented. *See In re J.L.,* 163 S.W.3d at 85.

Viewing the evidence in the light most favorable to the judgment, we conclude the evidence presented was legally sufficient to support the trial court's best interest finding. *See id.* Further, giving due deference to the evidence the fact finder could reasonably have found to be clear and convincing, we conclude the evidence is factually sufficient to support the trial court's finding. *See In re H.R.M.,* 209 S.W.3d at 108. There is no disputed evidence a reasonable fact finder could not have resolved in favor of its finding. *See In re J.F.C.,* 96 S.W.3d at 266. We overrule mother's second issue.

## D. Summary

The evidence is legally and factually sufficient to support the trial court's findings under sections 161.001(1)(D) and (E) and that termination is in the best interest of the children.

## IV. FATHER'S APPEAL

By issues one through four, father generally challenges the legal and factual sufficiency of the evidence supporting the trial court's findings regarding four statutory grounds for termination. By his fifth issue, father generally challenges the legal and

15

factual sufficiency of the evidence supporting the trial court's best interest finding. Father's issues are inadequately briefed and therefore are waived.

Texas Rule of Appellate Procedure 38.1(g) requires appellate briefs to contain a statement of facts supported by record references. TEX. R. APP. P. 38.1(g). Rule 38.1(i) requires appellate briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "Bare assertions of error without argument or authority waive error." *In re J.A.M.R.,* 303 S.W.3d 422, 425 (Tex. App.—Dallas 2010, no pet.). Father's statement of facts references only the procedural background for this case, but contains no reference to the evidence adduced at the termination trial. After setting out the standard of review, father's entire argument under each issue merely recites the issues stated without providing any argument, citation to the record, or legal authority.

The burden rests on the appellant to discuss his assertions of error. *Arellano v. Magana,* 315 S.W.3d 576, 577 (Tex. App.—El Paso 2010, no pet.). "We have no duty to perform an independent review of the record and applicable law to determine whether there was error." *Id.* An appellate issue unsupported by argument or containing an argument lacking citation to the record or legal authority presents nothing for review. *Id.* (citing *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.,* 150 S.W.3d 423, 427 (Tex. 2004)). By failing to brief each issue, father has waived his complaints. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994) (noting long-standing rule that point may be waived due to inadequate briefing); *In re D.J.W.*, 394 S.W.3d 210, 223 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding in an appeal from termination of parental rights that appellant waived challenge to sufficiency of the

evidence supporting trial court's best interest finding where she failed to provide legal argument); *In re C.D.K.*, 64 S.W.3d 679, 681–82 (Tex. App.—Amarillo 2002, no pet.) (concluding appellants waived legal and factual sufficiency challenge to the evidence supporting termination of parental rights where they failed to provide citation to legal authority or the record and presented no substantive analysis of the issue).

Even if we were to address father's issues, our review of the record as detailed above demonstrates the evidence is legally and factually sufficient to support the trial court's judgment. The record reflects that father was the primary perpetrator of domestic violence over a period of three years. At least two of the incidents occurred with E.K. present. And even though father's violent actions were the primary basis for the children's removal, father continued to perpetrate violence against mother, failed to complete his batterer's intervention and prevention program, and failed to make any progress toward his domestic violence counseling goals. This evidence is legally and factually sufficient to support the trial court's findings under Texas Family Code sections 161.001(1)(D) and (E). For those reasons outlined in the discussion of mother's appeal, the evidence is also legally and factually sufficient to support the trial court's finding that termination of father's parental rights is in the children's best interest.

We overrule each of father's issues.

### V. CONCLUSION

We affirm the trial court's judgment terminating appellants' parental rights.

Gregory T. Perkes
Justice

Delivered and filed the
14th day of May, 2015.

17